IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANNETTE LORRAINE HARRIS,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) Civil Action No. 2:12-CV-00541-KOB-S |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

On February 3, 2009, the claimant, Annette Harris, protectively filed for Supplemental Security Income under Title XVI of the Social Security Act. (R. 175-77, 218). She alleged disability commencing on January 1, 2003 because of back pain, nerve damage, a stroke, high blood pressure, and allergies. (R. 222).  The Commissioner denied the claims on August 10, 2009. (R. 119-123). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on December 17, 2010. (R. 15, 74).  At the hearing, the claimant, through her attorney, amended her onset date to February 3, 2009. (R. 78).  In a decision dated August 8, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplementary security income.  (R. 18).  On April 9, 2012, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3).  The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below,

this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review:

(1) whether the ALJ properly discredited the treating physician Dr. Carter's statement on the claimant's food stamp form stating that the claimant is disabled; and
(2) whether the ALJ had a duty to re-contact Dr. Carter to clarify her medical opinion.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if she applied the correct legal standards and if substantial evidence supports her decision. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. But this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must look not only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take into account evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating a medical opinion, an ALJ must consider multiple factors outlined in the federal regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. The Commissioner must accord the opinions of the treating physician with substantial or considerable weight, and unless the Commissioner shows *good cause* to the contrary, the Commissioner cannot discount the treating physician's opinions. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998). Good cause exists if the physician's opinion is not supported by evidence; the evidence supports a contrary finding; the physician's opinion is conclusory; or the physician's opinion is inconsistent with the doctor's

3

own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); 20 C.F.R. § 416.927.

An ALJ has a duty to fully and fairly develop the record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). As part of that duty, an ALJ may have a duty to re-contact a treating physician if the ALJ determines she does not have adequate evidence in the record to determine whether the claimant is disabled. *See Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir. 2005) ("Medical sources should be re-contacted when the evidence received from the source is inadequate to determine if the claimant is disabled."); *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need re-contact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."); 20 C.F.R. § 404.1520b, 416.920b(c)(1). An ALJ may re-contact a doctor if the doctor is a treating source; the treating source's opinion is unclear on an issue reserved for the commissioner; *and* the ALJ is not able to ascertain the basis for the opinion from the record. SSR 96-5p (emphasis added). Even when a duty to re-contact arises, the ALJ only has a duty to make a reasonable effort to re-contact the treating source. SSR 96-5p.

A medical source statement is a statement made by an acceptable medical source. SSR 96-5p. An acceptable medical source is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech pathologist. 20 C.F.R. § 404.1513(a)(1)-(5). The claimant has the burden to produce evidence supporting a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

## V.  FACTS

The claimant has a tenth grade education and was 45 years old at the time of the

administrative hearing. (R. 218). She has no past relevant work experience. (R. 30). The claimant alleges she is unable to work because of back pain, nerve damage in her hands, a stroke, high blood pressure, and allergies. (R. 222).

*Physical Limitations*

On May 21, 2009, the claimant visited Dr. Adrienne Carter, her treating physician. The claimant reported a pain level of eight. One of the claimant's diagnosed conditions was low back pain. The record does not indicate that Dr. Carter ordered any medical tests on the claimant's back or referred the claimant to a pain specialist. (R. 353, 390).

On July 21, 2009, Dr. Stacy Shomento, a gynecologist, performed a consultative examination of the claimant at the request of the Social Security Administration. The claimant complained of a bad back. Dr. Shomento noted that the claimant reported she initially hurt her back working on a chicken farm in 1988. More recently, the claimant stopped working at McDonalds because standing on her feet for a long time hurt her back. Dr. Shomento indicated that the claimant's x-rays taken in 2007 showed no back issue.[1] The claimant denied numbness or weakness; does not get stiffness in her lower back; does have stiffness in her elbows and knees; her pain is worse when it is cold; and nothing makes her feel better or worse other than some relief she gets from resting. (R. 315). Dr. Shomento's notes indicate that the claimant's physical examination was normal. Dr. Shomento diagnosed the claimant with chronic low back pain with no objective findings. (R. 316-18).

On August 7, 2009, Dr. Khurram Bashir saw the patient. Dr. Bashir's notes indicate that the claimant reported that she had back pain but none at the time of the visit. (R. 347).

---

[1] The court notes that the medical records from the x-ray are not in the record.

On April 1, 2010, the claimant visited her treating physician, Dr. Adrienne Carter. The claimant reported a pain level of zero. (R. 394).

On August 16, 2010, Dr. Carter completed a food stamp form at the request of the claimant. The form bearing Dr. Carter's signature states that the reason the claimant cannot work is low back pain, and Dr. Carter indicated she believed the condition was permanent. (R. 398).

On August 17, 2010, the claimant visited Dr. Carter. No pain level is indicated. No notes refer to the claimant's back pain. (R. 404).

On August 27, 2010, Dr. Turner completed a progress note for the claimant. The claimant's pain level was zero. No mention is made in the notes that the claimant needs to be treated for back pain or referred to a pain specialist. (R. 403).

On October 22, 2010, the claimant visited Dr. Carter. The claimant had a pain level of zero. Dr. Carter's notes do not indicate any new tests or medications for the claimant's back pain. (R. 417).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on December 17, 2010. (R. 74-117).

The claimant's attorney began the hearing by changing the claimant's onset date to February 3, 2009. On examination from the ALJ, the claimant testified that she was 44 years old; she is single but lives with a friend; she has four children ages 27, 25, and 22 year old twins; she finished the tenth grade; she can read certain things in the newspaper; she can do simple math; and her only income is $200 in food stamps. (R. 79-83).

On examination from her attorney, the claimant stated that she does not do anything else

outside, but she enjoys cooking and begins cooking at 3:00 when the claimant's children bring her grandchildren to see her. (R. 96).

Regarding her physical limitations, the claimant testified that she has low back pain and takes a muscle relaxer; she has difficulty sitting up for more than two hours because of back cramps; and she does not normally wear shoes. She stated that she cannot stand for more than 20 or 30 minutes because her legs swell, and she cannot walk because of lumps on her feet. The claimant indicated that she lies down a lot and sleeps during the day because of her medications. (R. 91-94, 97).

The ALJ next asked the claimant about her grandchildren and their visits to the claimant. The claimant testified that her grandchildren come about every day for two hours, and she watches them play video games. (R. 103-105).

The claimant testified that her back pain arises from abuse from her first husband. She stated that he used to kick her and medical personnel admitted her to the hospital in about 1989. The claimant testified that she is on a muscle relaxer but does not want any more medication because of her drug problems. Her nerve pills also help with her back. (R. 105-07).

Finally, the ALJ asked the claimant which of her conditions keeps her from working, her back pain or her depression. The claimant testified that she would try to work if her back pain went away even if her depression did not. (R. 109-10).

A vocational expert, Ms. Russell, testified at the hearing. After stating that her opinions were consistent with the Dictionary of Occuptaional Titles, the ALJ asked Ms. Russel about the claimant's past work as a poultry eviscerator. Both the ALJ and Ms. Russel agreed that poultry eviscerator is the only potential past relevant work for the claimant. Poultry eviscerator is

classified as light and unskilled. (R. 110-11).

The ALJ next asked the vocational expert a hypothetical. The ALJ asked if an individual of the following limitations could perform the claimant's past work: an individual who has the claimant's age, education and past work experience; who had no exertional limitations; who is limited to routine, repetitive tasks or basically could understand, remember, and carry out simple instructions; who cannot carry out more detailed instructions or make more than simple work-related decisions; who should have infrequent workplace changes that would be gradually introduced; who would have limited interaction with the public on a casual basis but frequent interaction with coworkers and supervisors; and who can concentrate for two hour blocks of time with normal breaks during the eight-hour day. The vocational expert testified the hypothetical individual could perform the claimant's past relevant work. Also, the vocational expert testified that the hypothetical individual could perform the medium unskilled jobs of automatic machine tender, laundry worker, and cleaner. At the light level, the claimant could be a sorter or assembler. (R. 113).

Next, the ALJ asked the vocational expert a second hypothetical. The second hypothetical continued with the first individual but added the following exertional limitations: "occasionally climb ramps and stairs but never ropes, ladders or scaffolds; could frequently balance, stoop, and kneel, occasionally crouch and crawl; should avoid concentrated exposure to extremes of temperature, such as heat, cold, humidity, and wetness, and also should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases; and who should also avoid exposure to hazardous conditions, such as heights or moving machinery." The vocational expert testified that the hypothetical individual could not perform the job of poultry eviscerator.

However, the hypothetical individual could perform the light jobs of sorter, material handler, and assembler. (R. 114)

Finally, the ALJ asked if the same individual from the first two hypotheticals could work if the individual could only perform work at the sedentary level. The vocational expert testified that the hypothetical individual could work as a production worker, assembler, tester, sorter, sampler, or weigher. The ALJ asked the vocational expert how many breaks are allowed in the sedentary occupations. The vocational expert stated that workers typically receive two fifteen-minute breaks as well as either a thirty minute or one-hour lunch break. The vocational expert stated that if the hypothetical individual had to take more than two days off per month, the person could not perform the sedentary occupations. (R. 115).

*The ALJ's Decision*

On August 8, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 31). First, the ALJ found that the claimant had not engaged in substantial gainful activity since February 3, 2009, her application date. (R. 20).

Second, the ALJ found that the claimant suffered from the following severe impairments: asthma; obstructive sleep apnea; restless leg syndrome; major depression; post-traumatic stress disorder; "rule out" borderline intellectual functioning; and substance abuse. The ALJ stated that the medical evidence established that the claimant had each impairment; the impairments caused more than minimal limitations; and the impairments lasted more than twelve months. (R. 20).

The ALJ next considered the claimant's history of hypertension, gastroesophageal reflux disease, anemia, and migraine headaches and concluded that they are not severe impairments. Although the ALJ decided these limitations were not severe, the ALJ stated she still considered

them when determining the claimant's residual functional capacity. (R. 21).

The ALJ considered the claimant's testimony that she experiences low back pain and determined that the objective medical evidence did not support the claimant's allegations. The ALJ noted that x-rays taken June 22, 2007 were negative for problems in the lumbar spine, and the treating physician's notes show no indication of abnormal findings; and no complaints. She also pointed out that Dr. Shomento, a consulting examining physician, showed no evidence of objective findings of back pain. The ALJ rejected the claimant's back pain as a severe impairment because the record contained no objective findings or diagnostic tests confirming the claimant's back pain. (R. 22, 314).

The ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals a listing. The ALJ noted that no objective medical evidence exists in the record that establishes a listing level impairment.  The ALJ concluded analyzing the claimant's physical impairments by stating that no treating physician diagnosed the claimant with a listing level impairment, and the ALJ stated that she placed significant weight in the normal pulmonary examination by Dr. Shomento. (R. 23).

The ALJ stated that the claimant had the residual functional capacity to perform light work. The ALJ considered the entirety of the record to evaluate the claimant's symptoms. Applying the pain standard, the ALJ recounted the factors she must apply to assess the claimant's credibility and the claimant's testimony concerning her physical ability. First, she concluded that the objective medical evidence does not support the claimant's statement that she has disabling back pain. The ALJ reasoned that the claimant's treating physician, Dr. Adrienne Carter, did not indicate swelling in the claimant's lower extremities, and the objective evidence in the medical

record does not support a medically determinable back impairment. (R. 26).

Further, the ALJ considered the claimant's daily activities as a factor. After reciting the claimant's statement of her daily activities, the ALJ noted that two factors weigh against finding the claimant disabled because of her limitations in daily activity. First, the ALJ reasoned that daily limitations cannot be objectively verified with any certainty. Second, the ALJ stated that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence. . . ." (R. 28). The ALJ concluded that the claimant's limited daily functions were outweighed by other factors. *Id*.

Finally, the ALJ noted inconsistencies in the claimant's record regarding daily activities, drug use, and depression symptoms. The ALJ stated that the claimant's statements that she is scared of people, does not go outside, has a bad memory, and does not like loud noises are not credible because the claimant's medical records do not show a history of complaints in those areas. (R. 28).

The ALJ assigned significant weight to Dr. Shomento, the consultative examiner, and noted that his pulmonary examination and finding of no objective basis for the claimant's back pain support the ALJ's decision. (R. 29).

The ALJ assigned no weight to Dr. Carter's opinions. The ALJ reasoned that the form submitted by Dr. Carter was not a medical source statement and was prepared in support of the claimant's food stamp application. The ALJ indicated Dr. Carter may have sided with the claimant in an effort to help the claimant on her food stamp form. Also, the ALJ stated that Dr. Carter's opinions and course of treatment are not consistent with someone who is disabled. The ALJ referenced that Dr. Carter ordered no diagnostic tests; prescribed no pain medication; and

did not refer the claimant to a pain specialist. Finally, the ALJ stated the claimant's back pain is not supported by Dr. Carter's notes that show normal physical examinations. The ALJ concluded by stating that she placed some weight on the claimant's mother's third party function reported because of her relationship with the claimant and direct observation of the claimant over a long period of time. (R. 29).

The ALJ found that the claimant has no past relevant work. The ALJ stated that the claimant did not earn enough money as a Poultry Eviscerator for that work to qualify as substantial gainful activity. Also, the ALJ found that under federal regulations, the claimant is a younger individual because she is 42 years old; that the claimant had a limited education and can communicate in English; and that the claimant does not have transferable job skills because the claimant does not have past relevant work. (R. 30).

Regarding alternate jobs to the claimant's past relevant work, the ALJ found that considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. The ALJ noted that she used the Medical-Vocational Guidelines as required by the federal regulations. The ALJ reasoned that the vocational expert testified that a person of the claimant's age, education, work experience, and residual functional capacity could perform light jobs like material handler. Additionally, the ALJ noted that sedentary jobs exist that the claimant can perform like assembler, production worker, and tester/sorter/sampler/weigher. (R. 30-31).

The ALJ concluded that the claimant was not under a disability under the Social Security Act. (R. 31).

## VI.  DISCUSSION

**A.  Consideration of the Opinion of Dr. Carter**

The claimant argues that the ALJ did not give proper weight to the medical opinion of her treating physician, Dr. Carter, reflected on the claimant's food stamp form. Claimant's Br. 5-6. To the contrary, this court finds that substantial evidence supports the ALJ's decision to discredit Dr. Carter's medical opinion on the claimant's food stamp form.

The Commissioner must accord the opinions of the treating physician substantial or considerable weight. *Lamb*, 847 F.2d at 703. Absent a showing of good cause to the contrary, the Commissioner cannot discount the treating physician's opinions. *Id.* Good cause exists if the physician's opinion is not supported by evidence, the evidence supports a contrary finding, the physician's opinion is conclusory, or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. An ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added). The claimant has the burden to produce evidence to support her claim. *Ellison*, 355 F.3d 1276.

The ALJ explicitly stated that she gave "no weight" to Dr. Carter's opinion on the claimant's food stamp form. The ALJ gave reasons based in the record for this determination. The ALJ noted that Dr. Carter's opinion on the form is not a medical source statement and was prepared in support of the claimant's food stamp application. Then, the ALJ indicated that Dr. Carter may have completed the form in an effort to help the claimant get food stamps. Next, the

ALJ reasoned that Dr. Carter's treatment of the claimant is not consistent with the course of treatment normally followed for a disabling back injury. The ALJ noted that Dr. Carter had not ordered diagnostic tests, pain medications, or referral to a pain management specialist. Finally, the ALJ stated that Dr. Carter's notes indicate normal physical examinations for the claimant.

An ALJ may give less weight to a medical opinion that is not supported by medical evidence. *See* 20 C.F.R. § 416.927. In the medical records produced from Dr. Carter, the claimant reported a pain level of zero to Dr. Carter on April 1, 2010. However, on August 16, 2010, on the food stamp form, Dr. Carter stated that the claimant's back pain was disabling. No medical evidence suggests that the claimant visited Dr. Carter any time between April and August of 2010. Additionally, on October 22, 2010, the claimant visited Dr. Carter again and reported a pain level of zero. An ALJ may discredit a physician's statement if it is not consistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. Dr. Carter's opinion is inconsistent with her medical records because a pain level of zero and her course of treatment are not consistent with chronic, disabling back pain.

The court notes that the ALJ was incorrect in stating that Dr. Carter's statement on the claimant's food stamp form was not a medical source statement. A medical source statement is a statement given by an acceptable medical source regarding what the claimant cannot do because of her condition. SSR 96-5p. A medical doctor is an acceptable medical source. *See* 20 C.F.R. § 404.1513(a)(1)-(5). Because Dr. Carter is a medical doctor and she stated that the claimant could not work because of back pain, Dr. Carter's opinion is a statement regarding what the claimant can do from an acceptable medical source. However, the ALJ provided other reasons for discrediting Dr. Carter's opinion that are sufficiently based in the record.

Based on the ALJ's explicit statements of her reasons supported by the record for giving less weight to Dr. Carter's opinion, this court concludes that the ALJ correctly applied the legal standard and that substantial evidence supports her decision.

## B.  Duty to Re-contact Dr. Carter

The claimant argues that the ALJ erred because she did not re-contact Dr. Carter. Claimant's Br. 8-9. However, the ALJ had no duty to re-contact Dr. Carter and, therefore, did not commit reversible error.

An ALJ has a duty to fully and fairly develop the record.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990). According to the regulations, an ALJ may re-contact a treating physician. *See* 20 C.F.R. § 404.1520b, 416.920b(c)(1). However, the Social Security Administration policy opinion interpreting the relevant regulations states that an ALJ must re-contact a doctor if the doctor is a treating source; the treating source's opinion is unclear on an issue reserved for the commissioner; and the ALJ is not able to ascertain the basis for the opinion from the record. SSR 96-5p. If the ALJ cannot make a determination based on the record, she should re-contact a doctor. *See Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir. 2005) ("Medical sources should be re-contacted when the evidence received from the source is inadequate to determine if the claimant is disabled."); *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need re-contact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."). Even when a duty to re-contact arises, the ALJ only has a duty to make a reasonable effort to re-contact the treating source. SSR 96-5p.

An acceptable medical source is a licensed physician, licensed or certified psychologist,

licensed optometrist, licensed podiatrist, or qualified speech pathologist. 20 C.F.R. § 404.1513(a)(1)-(5). The claimant has the burden to produce evidence supporting a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The court finds that Dr. Carter qualifies as a treating source because she had an ongoing relationship with the claimant. The medical record shows that the claimant visited Dr. Carter three times within eighteen months. However, Dr. Carter's stated reason for why the claimant is disabled is clear. The food stamp form asks which disability keeps the claimant from working, and Dr. Carter wrote chronic back pain. Dr. Carter listed no other disability on the form. Also, records exist that allowed the ALJ to conclude that Dr. Carter's opinion is conclusory. None of the medical records produced from Dr. Carter discuss treatment of the claimant's back pain with a referral to a pain specialist or additional medication and reflect she rarely complained of back pain. The ALJ had the necessary information to make a determination, and thus, did not have a duty to re-contact Dr. Carter.

This court concludes that the ALJ did not have a duty to re-contact Dr. Carter. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons above stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court simultaneously will enter a separate order to that effect.

DONE and ORDERED this 24th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE